## Zimmerman *versus* Briner, for use, &c.

*Construction of will.*—*"Heirs" to be understood in legal sense, in absence of explanatory language.*—*Exemption under attachment-execution, when to be claimed.*

1. Where a testator leaving ten children gave a portion of his real estate to be distributed after the death of his widow among "his heirs," and divided his residuary estate among his nine children and the wife of the tenth, by name: *held,* that the wife of the son who was excluded in the residuary clause of the will, was not entitled to any portion of the property which had been devised to the testator's widow for life, but that it was to be distributed among the children of the testator.

2. A legacy to one of two executors, payable out of real estate to be sold by them after the death of testator's widow, may be attached in their hands by a creditor of one of them and recovered.

3. The claim for $300 under the Exemption Law, is too late if made on the trial between the attaching creditor and the garnishee.

ERROR to the Common Pleas of *Perry county*.

This was an execution attachment issued by the plaintiff, to attach a legacy in the hands of William Zimmerman, acting executor of John Zimmerman, deceased, and which was alleged to be payable to John B. Zimmerman under the will of the testator.

The will of deceased was in substance as follows:—

He gave to his wife Elizabeth a certain lot at the south-west corner of the mansion tract, to hold the same for life, "and at her death to be sold, and equally divided between my heirs."

Directed his "executors to sell his farm, and a tract of woodland; and if they find the farm would be injured by cutting off the lot for his wife, they shall not do so, but shall purchase another lot for her during life, and at her death to be sold, and the proceeds equally divided between my heirs."

He then gave to his wife Elizabeth the interest of $1000, and at her death the principal "to be equally divided amongst my heirs," and also certain personal property named; to his son Henry Zimmerman, $100; to his son David Zimmerman, a horse, &c.; to his daughter Mary Ann Zimmerman, a bureau, a bedstead, and $80 in money; to his two youngest daughters, Sarah Ann and Matilda, each a bureau, &c., and to his daughter-in-law Elizabeth Zimmerman, intermarried with his son John Zimmerman, all his right, interest, and claim to the store owned by Henry Evinger and himself, she to be responsible for testator's share of liabilities connected with the same, and also a horse, &c.

Then followed this bequest:—"I give and bequeath to my sons Henry Zimmerman, William Zimmerman, David Zimmerman, and George Zimmerman, and to my daughters Margaret Black, Eliza Ewing, Mary Ann Zimmerman, Sarah Ann Zimmerman, Matilda Zimmerman, and my daughter-in-law Elizabeth Zimmerman, each

an equal share of the balance of the proceeds of the sale of my real and personal estate. And I do further order and direct that my executors shall withhold so much of the share of my daughter Margaret Black, and so much of the share of my daughter-in-law Elizabeth Zimmerman, as will release my estate from the payment of any part of a note made payable by myself and George Black to Ester, Shanan & Co., of Baltimore."

John Briner, for use of Daniel Earnest, obtained a judgment against John B. Zimmerman on the 5th January 1859, for $115.29 with interest from the 15th January 1859, and costs paid, amounting to $7.74; on which judgment the present attachment was sued out.

The issue was between the plaintiff in the judgment and the garnishee.

After the evidence was closed on both sides, John B. Zimmerman, the defendant in the judgment, co-executor with William Zimmerman, the garnishee, and named also as garnishee in the attachment, appeared and claimed the sum of $300 out of the fund under the Exemption Law.

The learned judge of the Common Pleas instructed the jury that there was evidence of the existence of a legacy in the hands of William Zimmerman, more than sufficient to pay the debt, interest, and costs due on the judgment on which the attachment issued. That the amount due and payable to the legatees at the death of testator's widow, that is, the proceeds of the house and lot set apart for the widow during her life, was at her death payable to testator's children (of whom John B. Zimmerman was one) and not to the wife of John B. Zimmerman, and that the claim under the Exemption Law was not in time. He therefore directed a verdict for plaintiff for the full amount of his claim.

This writ was then sued out by the garnishee, for whom the following errors were assigned:—

1. The court erred in saying that the legacy of money out of the estate of John Zimmerman, deceased, payable at the death of Elizabeth Zimmerman, was payable to John B. Zimmerman and not to his wife Elizabeth.

2. The court erred in denying John B. Zimmerman the right to claim $300, saying he had made his claim too late.

3. The court erred in taking the case from the jury and directing a verdict for the plaintiff.

*William H. Miller* for William Zimmerman and Mrs. Elizabeth Zimmerman, and *A. B. Anderson* for John B. Zimmerman, argued—1. That by the word "heirs" the testator meant his children, of whom there were ten. That after giving $100 to Henry, $80 to Mary Ann, and $45 each to Sarah and Matilda, he divided the balance of the proceeds of his real and personal

[Zimmerman *v.* Briner.]

estate into ten shares, and then gave one equal share to each child by name, except John B. Zimmerman, whom he omitted altogether and substituted his wife, giving her an equal share (a tenth) by name. And yet the court below decided that this tenth share went to John B. Zimmerman and not to his wife, because the word "heirs" was used in the first part of the will. Language could not designate in clearer terms whom he meant by "his heirs;" for after saying that the proceeds of each part of the real estate shall be distributed in equal shares among his heirs, he then proceeds to distribute to them, or to those whom he meant as his heirs, by name, and among them he named the wife of John B. instead of John B. Zimmerman himself. The whole will is thus reconciled. But if the terms were clearly contradictory, by the rule of law the last clause would be taken as designating the testator's intention. "A beneficiary may provide for a friend the means of subsistence for himself and family, without exposing his bounty to the debts or improvidence of the beneficiary:" Holdship *v.* Patterson, 7 Watts 547 ; Ashhurst *v.* Given, 5 W. & S. 323 ; Brown *v.* Williamson, 12 Casey 341. That the word "heirs" will be construed to mean children, &c., to carry out the intention of a testator, is a familiar principle : Stille *v.* Spear, 9 Wright 168.

2. If the fund was really payable to John B. Zimmerman, why was he not entitled to claim under the provisions of the Act of Assembly allowing insolvent debtors $300 ? Because, says the court, he did not claim it in time. We think this is straining the point to the last degree. Nobody made this objection on the trial. Mr. Anderson, who sat at the counsel-table as the attorney of John B. Zimmerman, simply said he claimed the fund for John B. Zimmerman under the Three Hundred Dollar Law ; and then the plaintiff went on, with evidence in waiting on the spot, anticipated and prepared to show that John B. Zimmerman was not entitled to make this claim, because he had a house furnished in Harrisburg. In this they failed, but it was not because they were taken by surprise.

To whom should John B. Zimmerman have given notice, and who was injured or objected because John B. Zimmerman gave him no notice ? His co-executor, William Zimmerman, did not object. He did not say that he had no notice, and has never denied that John B. Zimmerman claimed the benefit of the $300 from the beginning, and this money under it, if it is coming to him. Mr. Anderson was associated in the defence of the attachment from the beginning, for the very purpose of claiming it. He appeared for no person but John B. Zimmerman. Then to whom was John B. Zimmerman to give notice ? He was a co-executor, having as much control over the funds as William Zimmerman. He was also a garnishee, as appears by in the *præcipe* for the attachment. Was he to give notice to himself, or his co-

executor? This was superfluous, and his co-executor admits notice. When could an executor have been prejudiced for want of notice, even if John B. Zimmerman had not been a co-executor, and also a garnishee in the same attachment? Clearly he could not receive notice until after the attachment, and nothing has been done since the attachment by which he could be prejudiced. He was simply prevented from paying over the money to the legatee, at most, until it shall be determined who is entitled to it. The issue was formed simply to try that question, and all persons claiming it then came into court together, and each one made known the ground on which he claimed it. When John B. Zimmerman made known the ground on which he claimed it, the plaintiff proceeded to call his witnesses to show that he was not entitled to claim it.

But as William Zimmerman was the person to whom notice was to be given, if any notice was required, and as William Zimmerman does not object to the want of notice, but admits having received notice, can anybody else object to the want of notice? It is the person who holds the property who must have the notice. Parties claiming the benefit of the act out of a decedent's estate must give notice to the administrator. An insolvent whose property is in the hands of the sheriff must give notice to the sheriff; and by analogy we think here the only person entitled to object to the want of notice is the garnishee, and he does not, and did not, object to the want of notice. The whole fund in the hands of the garnishee is $186, arising out of the sale of the real estate, and payable at the death of the widow. As plaintiff did not succeed in proving that John B. Zimmerman has three hundred dollars' worth of property in addition to this, he is, we hold, entitled to this whole fund, unless it goes to his wife, Elizabeth Zimmerman.

*J. R. McClintock*, for defendant in error.

The opinion of the court was delivered by

STRONG, J.—The testator by his will set apart a portion of his property for his widow, to be enjoyed by her during her life. The portion thus set apart was the house and lot described in the will, and a fund of $1000. In this he created for her an estate for life, and he disposed of the remainder by directing that after her death, the house and lot should be sold, and that the proceeds of the sale, together with the $1000 fund, should be equally divided among his heirs. In regard to the residue of his property, probably the bulk of it, he gave no such directions. That he ordered to be divided equally, after the deduction of a few small legacies, among ten persons named, nine of whom were his children, and the tenth was the wife of another child. There is a clear differ-

[Zimmerman *v.* Briner.]

ence between his intentions respecting the part of his property devoted temporarily for the use of his widow, and the proceeds of sale of his farm and woodland and of his personal property. The former he gave to his heirs generally, subject to the particular estate of the widow. The latter he gave not to his heirs generally, but to the ten persons named, and excluded his son John. The will can be construed in no other way, without denying effect to some of its provisions. There is no sufficient reason found in the language of the testator, to warrant a belief that he intended to use the word heirs in any other than its legal sense. He did not attempt to define it. The court below was therefore right in holding that John Zimmerman, as one of the heirs of the testator, is entitled to a proportionate part of the $1000 fund, and of the proceeds of sale of the house and lot devised to the widow for life.

The other point raised, on behalf of the plaintiff in error, is put at rest by Strouse's Executor *v.* Becker, 8 Wright 206, if, indeed, it can be raised at all, in a writ of error sued out by the garnishee.

The judgment is affirmed.